# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

AARON ROTHENBERG,

      Plaintiff,

v.                                                                  Case No. 3:21-cv-1213-MMH-LLL

KNIGHT SWIFT
TRANSPORTATION, WAL-MART
STORES INC., COSTCO
WHOLESALE CORPORATION,
and TARGET CORPORATION,

      Defendants.

_____

# **O R D E R**

**THIS CAUSE** is before the Court on four motions to dismiss Plaintiff

Aaron Rothenberg's Second Amended Complaint (Doc. 44).  <u>See</u> Defendant

Swift Transportation Company of Arizona, LLC's Motion to Dismiss Plaintiff's

Second Amended Complaint and Incorporated Memorandum of Law (Doc. 47;

Swift Motion), filed March 9, 2023; Defendant Costco Wholesale Corporation's

Motion to Dismiss Second Amended Complaint (Doc. 49; Costco Motion), filed

March 10, 2023; Target Corporation's Motion to Dismiss Plaintiff's Second

Amended Complaint and Incorporated Memorandum of Law (Doc. 50; Target

Motion), filed March 13, 2023; Defendant, Wal-Mart Stores Inc.'s Motion to

Dismiss Second Amended Complaint and Incorporated Memorandum of Law

(Doc. 51; Wal-Mart Motion), filed March 13, 2023 (collectively, "Motions"). Rothenberg has filed a response to each of these Motions. <u>See</u> Response to Defendant Swift Transportation Company of Arizona, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Doc. 56; Swift Response), filed March 28, 2023; Response to Defendant Costco Wholesale Corporation's Motion to Dismiss Second Amended Complaint (Doc. 54; Costco Response), filed March 23, 2023; Response to Target Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum[ ]of Law (Doc. 58; Target Response), filed April 3, 2023; Response to Defendant, Wal-Mart Stores Inc.'s Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law (Doc. 53; Wal-Mart Response), filed March 23, 2023 (collectively, "Responses"). In the Motions, each Defendant seeks dismissal of Rothenberg's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)) for failure to state a claim upon which relief can be granted. <u>See</u> Swift Motion at 1; Costco Motion at 5; Target Motion at 1; Wal-Mart Motion at 1. In addition, each Defendant asserts that the Second Amended Complaint should be dismissed for failing to comply with Rules 8 and 10. <u>See</u> Swift Motion at 1; Costco Motion at 5; Target Motion at 1; Wal-Mart Motion at 1. Upon review of the Motions, Responses, and the Second Amended Complaint, the Court finds that this case is due to be dismissed.

## I.    Procedural History

Rothenberg initiated this action on November 8, 2021, by filing his original complaint in the Fourth Judicial Circuit Court in and for Duval County, Florida.  See Notice of Removal at 2 (Doc. 1), filed December 8, 2021; State Court Complaint at 1 (Doc. 1-3; Original Complaint).   With the consent of the other three Defendants, Swift Transportation Company of Arizona, LLC (Swift) removed the action to this Court.[1]  See Notice of Removal at 4.   Swift and Target then moved to dismiss the Original Complaint.   See generally Defendant Swift Transportation Company of Arizona, LLC's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 4; First Swift Motion), filed December 13, 2021; Target Corporation's Motion to Dismiss Plaintiff's

---

[1] In his Original Complaint, Rothenberg named "Knight Swift Transportation" as a defendant, not Swift Transportation Company of Arizona, LLC.  See Original Complaint at 1.    In the Second Amended Complaint, he identifies this entity as "Knight Swift Transportation Holdings, Inc."   See Second Amended Complaint at 1.   The Defendant who appeared in this action, however, is Swift Transportation Co. of Arizona, LLC, which maintains that Rothenberg "improperly identified" it as "Knight Swift Transportation."   See Notice of Removal at 1.   Rothenberg has acknowledged this assertion, and represents that "Swift Transportation Company of Arizona, LLC is a subsidiary of Knight-Swift Transportation Holdings, Incorporated."   See Response to Defendant Swift Transportation Company of Arizona, LLC's Motion to Dismiss and Incorporated Memorandum of Law at 1 (Doc. 8; First Swift Response), filed December 28, 2023.   Nonetheless, Rothenberg continues to identify "Knight Swift Transportation Holdings, Inc." as the named Defendant.   See Second Amended Complaint at 1.   Significantly, Rothenberg has not argued that Swift is the wrong party.   Indeed, despite filing two motions for entry of default as to Defendants Costco Wholesale Corporation and Wal-Mart Stores, Inc., Rothenberg has not asserted that Knight-Swift Transportation Holdings, Inc. has failed to appear in this action.   See Order Denying Requests for Default as Moot at 1 (Doc. 18), entered February 1, 2022.   Accordingly, the Court will construe Rothenberg's references to "Knight Swift" as referring to Defendant Swift.

Complaint and Motion to Strike (Doc. 7; First Target Motion), filed December 22, 2021.

After Rothenberg responded to these Motions, he submitted to the Court for filing a hard drive containing body camera footage which he represented would show "the type of actions [Rothenberg] has contended with on the roads of the nation . . . ."  See Notice of Filing Hard Drive Containing Body Cam Footage (Doc. 10), filed January 13, 2022.   Costco and Wal-Mart then appeared in this action and also moved to dismiss Rothenberg's Original Complaint.   See generally Defendant Costco Wholesale Corporation's Motion to Dismiss and Memorandum of Law (Doc. 14; First Costco Motion), filed January 24, 2022; Defendant, Wal-Mart Stores Inc.'s Motion to Dismiss and Memorandum of Law (Doc. 16; First Wal-Mart Motion), filed January 24, 2022.   As before, Rothenberg responded to these motions and then filed more body camera footage—this time on three additional hard drives.   See Notice of Filing Second Hard Drive Containing Body Cam Footage (Doc. 22), filed March 15, 2022; Notice of Filing Third and Fourth Hard Drive Containing Body Cam Footage (Doc. 23), filed May 20, 2022.

On June 14, 2022, the Court dismissed Rothenberg's Original Complaint without prejudice for failure to state a claim upon which relief could be granted.

See Order (Doc. 24; Order Dismissing Original Complaint) at 11.[2]   In doing so, the Court explained that the Original Complaint consisted of "vague legal conclusions without any factual support," and thus that it failed to plead "enough facts to state a claim to relief that is plausible on its face."   See id. at 10.   The Court declined to review Rothenberg's hard drives, and explained that "ordinarily a court may not consider facts not alleged in the complaint nor documents attached to a motion to dismiss."   See id. at 10–11 (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)).   Nevertheless, the Court allowed Rothenberg to file an Amended Complaint (Doc. 25), which he did on July 11, 2022.   Once again, all Defendants filed motions to dismiss and Rothenberg filed responses.   See Order (Doc. 43; Order Dismissing Amended Complaint). Rothenberg also submitted yet another hard drive to be filed in his case, as well as bills of lading from Rothenberg's deliveries "to Wal-Mart, Costco, and Target locations" in the course of his job.   See Notice of Filing Fifth Hard Drive Containing Body Cam Footage (Doc. 40), filed January 5, 2023; Wal-Mart, Target, and Costco Bills of Lading (Doc. 39), filed November 16, 2022; Costco Bill of Lading (Doc. 41), filed January 26, 2023.

---

[2] This case was originally assigned to the Honorable Henry Lee Adams, Jr. and reassigned to the undersigned on February 27, 2023.   See Order (Doc. 45), entered February 28, 2023.

Upon review of Defendants' motions, the Court again dismissed Rothenberg's claims.  See generally Order Dismissing Amended Complaint. In doing so, Judge Adams noted that Rothenberg's Amended Complaint "suffer[ed] the same defects that led to the dismissal of [Rothenberg's] initial complaint," and that it consisted of "vague and conclusory assertions against all Defendants."  Id. at 12.   And once again, the Court declined to review Rothenberg's body camera footage.  See id. at 15–16.  After determining that Rothenberg had "not stated a cause of action as to any claim" in the Amended Complaint, Judge Adams dismissed the Amended Complaint and permitted Rothenberg to file a Second Amended Complaint.[3]  Id. at 15–17.   Rothenberg then filed the operative Second Amended Complaint.   As discussed above, each Defendant now moves to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted.[4]

## II.    Factual Background[5]

Rothenberg worked as a commercial motor vehicle operator for Swift between July 2018 and August 2020.   Second Amended Complaint ¶ 8.   After

---

[3] While the Court dismissed most of Rothenberg's claims without prejudice for being too "vague and conclusory," the Court dismissed his claim for False Light with prejudice because it "is no longer a recognized cause of action under Florida law."  See Order Dismissing Amended Complaint at 15.

[4] Defendants Wal-Mart and Costco also suggest that they are moving pursuant to Rule 12(e).  See Wal-Mart Motion at 1; Costco Motion at 1.   However, Rule 12(e) allows a party to "move for a more definite statement," not for dismissal.  See Rule 12(e).   Because Wal-Mart and Costco do not request a more definite statement in their respective Motions, the Court will not address Rule 12(e).

[5] In considering a Motion to Dismiss, "the court reviews a plaintiff's pro se allegations

leaving this job, he continued to work as a professional driver for First Carrier Transportation from August 2020 to "mid-December 2022." Id. ¶ 9. According to Rothenberg, since 2018, Defendants have subjected him to a broad, ongoing conspiracy to assault him, defame him, humiliate him, invade his privacy, and "extort self-harm by way of [Rothenberg's] suicide." Id. ¶ 11. He asserts that this conspiracy involves "seemingly constant stalking," and is orchestrated by "personnel from the top to the bottom of the Defendants' organization[s]." Id. ¶¶ 13, 15. He further states that the conspiracy involves Defendants' employees "scream[ing] defamatory statements" about him in public, assaulting him, surveilling him, collecting and distributing his private information, and intentionally seeking to damage his emotional health, among other allegations. See id. ¶¶ 19, 23, 27, 31, 35.[6]

---

in a liberal fashion, accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff." See Freeman v. Fine, 820 F. App'x 836, 838 (11th Cir. 2020). As such, the facts recited here are drawn from the Second Amended Complaint and may well differ from those that ultimately could be proved.

    In citing Freeman, the Court notes that it does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[6] In his Second Amended Complaint, Rothenberg includes separate sections directed at each individual Defendant, but most of the factual allegations in each section are identical. When referring to allegations that are the same for each Defendant, the Court will generally quote a single example of the allegation rather than enumerating each specific allegation. For the same reason, the Court will sometimes discuss the adequacy of Rothenberg's claims generally, without reference to a particular Defendant.

In his Second Amended Complaint, Rothenberg brings six state-law claims against each Defendant.   First, Rothenberg asserts claims of defamation based on false statements he believes Defendants' employees are spreading about him.   See id. ¶¶ 19–22, 41–44, 63–66, 85–88.   Second, Rothenberg alleges claims of assault based on verbal and physical threats.   See id. ¶¶ 23–25, 45–47, 67–69, 89–91.   Rothenberg next brings claims for invasion of privacy under two theories: intrusion upon seclusion and public disclosure of private facts, respectively.   See id. ¶¶ 26–34, 48–56, 70–78, 92–100.   He then asserts claims of intentional infliction of emotional distress, see id. ¶¶ 35–37, 57–59, 79–81, 101–103, and civil conspiracy.   See id. ¶¶ 38–40, 60–62, 82–84, 104–106.   Rothenberg seeks relief in the form of "compensatory and general damages," as well as a permanent injunction to prevent future tortious conduct. See id. ¶¶ 107–114.[7]

Each Defendant now seeks dismissal of Rothenberg's Second Amended Complaint, arguing that the Complaint still fails to state a claim upon which relief can be granted.[8]   See Swift Motion at 2, Target Motion at 1, Costco Motion at 1, Wal-Mart Motion at 1.

---

[7] Specifically, Rothenberg seeks $4,000,000 in damages from Wal-Mart, $3,000,000 from Swift, and $1,000,000 from the remaining Defendants, Target and Costco.   See Second Amended Complaint ¶¶ 110–113.

[8] In addition, Swift and Target argue that the Second Amended Complaint constitutes a shotgun pleading.   See Swift Motion at 8–9; Target Motion at 8.   In particular, Swift asserts that this is true (at least in part) because Rothenberg "has alleged the exact same conduct by each defendant."   See Swift Motion at 9.   Because the Court determines that this

## III.   Standard of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

action is due to be dismissed based upon Rothenberg's failure, after three attempts, to state plausible claims for relief, the Court need not consider Target and Swift's additional arguments.

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Notably, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Id. (citation omitted). And, while "[p]ro se

pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706); see also Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014).

## IV.   Discussion

Upon review of Rothenberg's Second Amended Complaint, the Court finds that it is due to be dismissed because he has failed to state plausible claims for relief.   As an initial matter, the Court notes that this is Rothenberg's third attempt to plausibly plead the claims he seeks to pursue in this action.   Twice the Court has identified the legal elements of each of his claims.   See Order Dismissing Original Complaint at 4–7; Order Dismissing Amended Complaint at 4–12.   And twice the Court has pointed to the deficiencies in his allegations. See Order Dismissing Original Complaint at 7–10; Order dismissing Amended Complaint at 12–16.   Despite this, Rothenberg has failed to cure the deficiencies.   Rothenberg's new allegations are just as conclusory and devoid of

factual content as those that the Court has already deemed to be insufficient. Simply put, the Second Amended Complaint does not allege sufficient <u>facts</u>—as distinguished from "labels and conclusions," <u>Twombly</u>, 550 U.S. at 555—to state a claim for relief that is plausible on its face.

Moreover, the Court is convinced that in his Second Amended Complaint Rothenberg still fails to give Defendants fair notice of the basis of his claims, and has not pleaded enough facts to support a reasonable inference that Defendants are liable for the conduct about which he complains.   Although Rothenberg asserts that "personnel from the top to the bottom of" Defendants' organizations—including "[m]anagement personnel at every level"—have engaged in tortious behavior, Second Amended Complaint ¶ 15, this allegation is nothing but a broad conclusion, and Rothenberg does not provide any facts to explain why he believes that his assailants were employees of any particular Defendant.   Nowhere does Rothenberg identify a single employee by name or description, provide examples of any specific incident in which he experienced the untoward conduct, or explain how he attributes that conduct to the employees of any Defendant.[9]   Instead, Rothenberg refers to an exceedingly

---

[9] Rothenberg asserts that he "could never hope to name" many of the employees who allegedly assaulted him.   <u>See</u> Wal-Mart Response at 3.   But the issue is not that Rothenberg has failed to provide the specific names of each employee who he believes to be responsible for the conduct he alleges.   <u>See</u> <u>Erickson</u>, 551 U.S. at 93 (explaining that "[s]pecific facts are not necessary" to satisfy Rule 8(a)(2)'s pleading standard).   It is that Rothenberg has failed to plead any facts in support of his broad claims.   Indeed, it is the overall lack of non-conclusory, factual allegations that, if accepted as true, would "allow[ ] the court to draw the reasonable

vague and wide range of tortious behavior from "a variety of parties" at a multitude of locations.  See id. ¶ 16 (describing this conduct as occurring "within the scope of [Rothenberg's] employment," at "hotel rooms," at Rothenberg's home, and at "other places of note").  In doing so, while Rothenberg generally identifies the underlined types of tortious behavior about which he complains, he fails to provide any factual assertions supporting his claims, and instead relies entirely on broad, vague, and wholly conclusory statements.

Before addressing each of Rothenberg's claims, the Court considers Rothenberg's reliance on the body camera footage and bills of lading he has filed in the Court record.  As discussed above, Rothenberg filed several hard drives containing "a massive amount of body camera footage" that, according to him, show Defendants' employees engaging in the conduct he alleges.  See, e.g., Wal-Mart Response at 4.  Although ordinarily a court may not consider materials outside the complaint in ruling on a motion to dismiss, there is an exception when a document attached to the motion is referenced in the complaint, central to the plaintiff's claim, and of undisputed authenticity.  See Day, 400 F.3d at 1276; Horsley v. Feldt, 304 F.3d 1125, 1134–35 (11th Cir. 2002).  However, the Court is not convinced that this principle applies here. The videos are not attached to any of the Motions, nor are they attached to the

---

inference that [any] [D]efendant [is] liable for the misconduct alleged" that is fatal to his pleading.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Second Amended Complaint.   Even if they were, it is unclear that the <u>videos</u>—as opposed to the events they purportedly depict—are "central" to the claims Rothenberg alleges in the Second Amended Complaint.   Cf. <u>Day</u>, 400 F.3d at 1275–76 (holding that the text of a contract was "central" to a complaint because it was "a necessary part of [the plaintiff's] effort to make out a claim").   It is also unclear whether the videos' authenticity is uncontested.[10]

Regardless, the Court must determine whether Rothenberg states a claim by analyzing the well-pled allegations of fact contained in his Second Amended Complaint.   Even if the Court could consider Rothenberg's supplemental materials in ruling on the Motions, it would not relieve Rothenberg of his obligation to <u>plead</u> "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.   Indeed, it is incumbent on Rothenberg to apprise Defendants of the claims he is bringing and the basis of those claims. <u>See Erickson</u>, 551 U.S. at 93 (noting that a complaint should give a defendant fair notice of a claim and "the grounds upon which it rests" (internal quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 555)).   His references to the

---

[10] Counsel for Swift represents that she "watched and listened to at least three dozen videos" of the hundreds of hours Rothenberg provided, and "has not encountered a single video where another person could be seen or heard."   Swift Motion at 3 n.2.   The Court cannot determine which portions of the footage Defendants have seen, and therefore cannot determine which portions, if any, are of uncontested authenticity.   Counsel's failure to review the entirety of the footage is understandable: Rothenberg has provided far too many videos for any party (or the Court) to reasonably review, and he provides no indication of which videos are relevant to any claims he presents.   For this same reason, the Court declines to convert Swift's Motion "into a Motion for Summary Judgment and consider [the videos] in that context." <u>See id.</u>

"exorbitant amount of video footage" he filed in this case, see Swift Response at 3, are no substitute for a well pled complaint that satisfies his pleading obligations.   Although Rothenberg is proceeding pro se, that "'does not give a court license to serve as de facto counsel for [him] or to rewrite [his] otherwise deficient pleading in order to sustain an action'" based upon what the Court observes in the videos.   Campbell, 760 F.3d at 1168–69 (quoting GJR Invs., Inc., 132 F.3d at 1369).

Twice the Court has told Rothenberg that, in a complaint, he must plead enough facts to state a claim that is plausible on its face.   See Order Dismissing Original Complaint at 10; Order Dismissing Amended Complaint at 12.   And twice the Court has advised him that it will not consider the contents of the hard drives he has submitted in ruling on a motion to dismiss.   See Order Dismissing Original Complaint at 10–11; Order Dismissing Amended Complaint at 15–16.   Indeed, Rothenberg submitted four of the five hard drives containing the video footage before the Court dismissed his Original Complaint, and he filed the fifth before the Court dismissed his Amended Complaint.   See Order Dismissing Original Complaint at 10 (listing the first four docket entries); Order Dismissing Amended Complaint at 15–16 (declining to consider the fifth docket entry). Accordingly, Rothenberg has been well aware that relying on the videos will not suffice and has had ample opportunity to determine what conduct recorded on the videos supports his claims.   Despite

this, Rothenberg has made no effort to identify any conduct he believes supports his claims from the recordings and point the Court to it, nor has he attempted to include allegations of fact describing that conduct in his Second Amended Complaint.   Instead he has stubbornly opted to continue to point to the video footage.   On this record, the Court declines to consider the content of the videos and will determine the sufficiency of Rothenberg's claims by reference to Rothenberg's allegations in the Second Amended Complaint.

### a. Defamation

As his first claim against each Defendant, Rothenberg asserts a claim of defamation based on false statements that he alleges each Defendant's employees have "screamed" about him "on the open road, nationwide in the public eye," as well as "internally within its organizational structure and at business invitees on their premises."   See Second Amended Complaint ¶ 19. Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) [the] actor must act . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory."   Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A–580B (Am. L. Inst. 1977)).[11]   In their respective Motions, each Defendant argues that Rothenberg's

---

[11] Because the case is before the Court based on diversity jurisdiction, see Second Amended Complaint ¶ 1, the substantive law of the forum state, Florida, applies.   See

pleading of this claim is deficient because his allegations lack sufficient detail to state a plausible claim for relief.[12]   See Swift Motion at 11; Wal-Mart Motion at 5; Target Motion at 10; Costco Motion at 3.   In response, Rothenberg attempts to rely on his body camera footage   See, e.g., Swift Response at 7–8.

Defendants are correct.   In the Second Amended Complaint, Rothenberg describes statements "that the Plaintiff is a rapist, a murderer, a cop killer, [and] a serial killer," among several other things.   See Second Amended Complaint ¶ 20.   He pleads that these statements are false, see id. ¶ 21, and the Court accepts that they are false for purposes of resolving Defendants' Motions.   See Freeman, 820 F. App'x at 838.   But Rothenberg does not present any factual allegations regarding the circumstances of any particular statement, such as where or when the statement was made, the person (or persons) who made the statement, or to whom it was made.[13]   He simply states

---

Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).   Rothenberg also states that "a substantial part of the events" giving rise to his claims occurred in the Middle District of Florida.   See Second Amended Complaint ¶ 2; see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1301 (11th Cir. 2003) (stating that "Florida utilizes the 'most significant relationship' test to determine which state's laws appl[y] to tort claims").   As such, the Court applies Florida law in evaluating the sufficiency of Rothenberg's claims.

[12] In addition, Swift argues that even if Rothenberg had alleged that Swift's employees defamed him, his claim against Swift would still fail because he has not plausibly alleged that Swift's employees committed the relevant acts within the scope of their employment.   See Swift Motion at 10 (citing Dieas v. Assocs. Loan Co., 99 So. 2d 279, 281 (Fla. 1957)).   In response, Rothenberg contends that he has alleged that the employees were acting within the scope of their employment because he pleaded that the conduct occurred at "work locations and on the open road from a semi-truck."   Swift Response at 8.   Rothenberg provides no authority to support the proposition that such vague and general statements are sufficient to plead that the conduct occurred "within the scope of the tortfeasors' employment."   Id.

[13] In his Second Amended Complaint, Rothenberg added lists of "[i]ndividual

that each Defendant "screamed" these statements "nationwide" and "intentionally told [them] to as many persons as possible" as part of a course of conduct that has been ongoing "since 2018." Second Amended Complaint ¶¶ 19, 21. These allegations are simply too conclusory to be entitled to a presumption of truth. See Iqbal, 556 U.S. at 679. Accordingly, Rothenberg has not pleaded sufficient factual material, accepted as true, to state a claim for defamation that is plausible on its face against any of the Defendants in this action. See Twombly, 550 U.S. at 570. His defamation claims, therefore, are due to be dismissed.

### b. Assault

As his second claim against each Defendant, Rothenberg brings a claim for assault based on statements and "gestures" made by each Defendant's employees. See Second Amended Complaint ¶¶ 23–25. "Florida law defines assault as 'an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril.'" Cutino v. Untch, 79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015) (quoting Sullivan v. Atl. Fed. Sav. & Loan Ass'n, 454 So. 2d 52, 54 (Fla. 4th DCA 1984)).[14] As to these counts, each Defendant

---

communities where [the] defamatory statements have been spread the most" by each Defendant. See Second Amended Complaint ¶¶ 20, 42, 64, 86. These general, conclusory lists, which consist of cities like "Phoenix, AZ," "Jacksonville, FL," and "Dallas, TX," see id. ¶ 20, do not add material factual support for Rothenberg's claims.

[14] The Court notes that although decisions of other district courts are not binding, they

argues that Rothenberg fails to allege sufficient facts in his Second Amended Complaint to state a claim for relief that is plausible on its face. <u>See</u> Swift Motion at 12; Target Motion at 11; Costco Motion at 4; Wal-Mart Motion at 5. As Wal-Mart explains, without allegations regarding the involved employee or the circumstances of the threats in question, Rothenberg has not plausibly alleged that any particular Defendant's employees assaulted him, much less that they did so within the scope of their employment and in furtherance of that Defendant's interest. <u>See, e.g.</u>, Wal-Mart Motion at 5 (arguing that Rothenberg "has not identified a single employee who participated in this alleged assault, nor alleged that any such employee was acting in the course/scope of employment and/or to further Wal-Mart's interests, nor has he identified a time, date, or place where this alleged conduct occurred").

Much like his claims for defamation, Rothenberg presents conclusory statements that he "has been assaulted," and asserts that each Defendant is responsible for the litany of statements and gestures he describes.[15] <u>See</u> Second Amended Complaint ¶¶ 23–25. But these conclusory assertions are not

---

may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[15] The Court notes that not all of Rothenberg's allegations are equally conclusory in describing the circumstances of the conduct. For example, Rothenberg describes "threats to run [him] off the road while driving a commercial motor vehicle," which included "gestures of and physically jerking of the wheel in" Rothenberg's direction. <u>See</u> Second Amended Complaint ¶ 24. But while this may provide more detail than his other examples, Rothenberg does not present additional facts which identify a particular instance when this conduct occurred, or which plausibly show that it involved an employee of any Defendant.

"factual content that allows the [C]ourt to draw the reasonable inference that [any Defendant] is liable for" assault.   See Iqbal, 556 U.S. at 678.   Nor do Rothenberg's broad, conclusory allegations provide any Defendant with notice of the factual basis of his claims.   Rothenberg provides no facts to explain why he believes that the employees of any Defendant were involved in the conduct, nor does he describe any example of this conduct with enough detail for the Court to draw a reasonable inference that a Defendant could be responsible for the employees' conduct, or that Rothenberg was in fear of imminent peril, much less that such fear was reasonable under the circumstances.[16]   Accordingly, Rothenberg simply has not stated a claim for assault that is plausible on its face.   See Twombly, 550 U.S. at 570.[17]   The assault claims against each Defendant are due to be dismissed.

---

[16] As with his claims for defamation, Rothenberg now includes lists of "[s]ites owned by" each Defendant "where this assault has occurred."   See Second Amended Complaint ¶¶ 23, 45, 64, 89.   These lists are of no help.   They describe, for example, "terminals in Richmond, VA; Jurupa Valley, CA; Manteno, IL," and others.   See id. (listing "[s]ites owned by" Swift).   These broad, conclusory lists of cities, which lack any factual detail, do nothing to add plausible support for Rothenberg's claims.

[17] As Wal-Mart and Swift correctly note, in order for an employer to be liable for the tortious actions of an employee, the action must be committed within the scope of the employment and to further a purpose or interest of the employer.   Wal-Mart Motion at 5; Swift Motion at 12; see also Iglesia Cristiana La Casa Del Señor, Inc. v. L.M., 783 So. 2d 353, 356–57 (Fla. 3d DCA 2001) ("Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer.").   Rothenberg presents no allegations supporting such a finding.   For this additional reason, Rothenberg's assault claims against these two Defendants fail.

### c. Intrusion Upon Seclusion

As his third claim against each Defendant, Rothenberg asserts a claim for intrusion upon seclusion. <u>See</u> Second Amended Complaint ¶¶ 26–30. "Florida law defines intrusion [upon seclusion] as 'physically or electronically intruding into one's private quarters.'" <u>Oppenheim v. I.C. System, Inc.</u>, 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010) (quoting <u>Allstate Ins. Co. v. Ginsberg</u>, 863 So. 2d 156, 162 (Fla. 2003)). The intrusion "must be highly offensive to a reasonable person." <u>Id.</u> at 1309. Each Defendant contends that Rothenberg has not plausibly alleged that it intruded upon his seclusion because, as with his other claims, Rothenberg's allegations simply lack enough factual material—accepted as true—to plausibly suggest that such an intrusion occurred.[18] <u>See</u> Swift Motion at 13–14; Costco Motion at 4–5; Wal-Mart Motion at 6; Target Motion at 12–13.

In his Second Amended Complaint, Rothenberg asserts that Defendants have "intruded upon [his] seclusion . . . whenever possible." Second Amended Complaint ¶ 26. He also asserts that these intrusions are done "to surveil" him and gather his personal information, and also to keep him "under the assault

---

[18] In addition, Costco argues that Rothenberg has failed to state a claim for relief against it because Rothenberg "does not incorporate any common allegations in the "Facts" section of the [Second Amended] Complaint to any Count involving Costco." Costco Motion at 3. However, because the Court must construe <u>pro se</u> complaints liberally, it does not dismiss Rothenberg's Second Amended Complaint on this basis. <u>See</u> <u>Freeman</u>, 820 F. App'x at 838.

described" elsewhere in his Second Amended Complaint.   See id. ¶ 27.
However, Rothenberg does not provide any details about any particular
intrusion—not even one—nor does he allege facts to explain why he ascribes
any such intrusion to any Defendant.   See id. ¶¶ 26–30.   Instead, he merely
states that "[e]mployees for the Defendant have claimed" that they "have access
to cameras in his sleeper cab, his bedroom, and in hotel rooms" Rothenberg
frequents, that they have "physically intruded into these areas," and that they
are "completely apprised of all of his online activities through the internet
service providers and cellular carrier" he uses.   Id. ¶ 29.   Rothenberg further
asserts that these actions are for the purpose of gathering private information
and causing him distress, and that the intrusions would be "highly objectionable
and offensive to a reasonable person, especially when conducted nationwide."
See id. ¶¶ 26–29.

To the extent that Rothenberg is alleging that these employees do not
simply "claim to be," but are apprised of "all of his online activities through [his]
internet service providers and cellular carrier," he provides no authority which
suggests that this knowledge of his private activity constitutes intrusion into
his "private quarters" by any Defendant.   See Oppenheim, 695 F. Supp. 2d at
1308; see also Spilfogel v. Fox Broad. Co., 433 F. App'x 724, 727 (11th Cir. 2011)
(explaining that to establish a claim of intrusion upon seclusion, "Florida law
explicitly requires an intrusion into a private place and not merely a private

activity" (emphasis added)); <u>Bradley v. City of St. Cloud</u>, No. 6:12-cv-1348-ORL-37TBS, 2013 WL 3270403, at *4–5 (M.D. Fla. June 26, 2013) (determining that the defendants' access of the plaintiff's medical records at a hospital without authorization was not an intrusion into a "home or another private place," and thus the plaintiff failed to state a claim for intrusion upon seclusion under Florida law).   Reading the Second Amended Complaint liberally, Rothenberg's allegations could arguably suggest that someone accessed "cameras in . . . [Rothenberg's] bedroom" without his consent.   <u>See</u> Second Amended Complaint ¶ 29.   But Rothenberg does not provide any <u>facts</u> to ascribe this access to any Defendant beyond his conclusory assertion that he learned of the access from unidentified "[e]mployees for the Defendant[s]."   <u>See</u> <u>id.</u>   He does not identify or describe any individual who he believes accessed any quarters or cameras, let alone present facts which plausibly connect such an individual to any Defendant.   In sum, these statements are no more than legal conclusions which simply lack any factual content to allow "the Court to draw the reasonable inference that" any particular Defendant intruded upon Rothenberg's seclusion or that any such intrusion would have been "highly offensive" to a reasonable person.   <u>See</u> <u>Iqbal</u>, 556 U.S. at 678; <u>Oppenheim</u>, 695 F. Supp. 2d at 1309.   These claims are due to be dismissed.

### d. Public Disclosure of Private Facts

As his fourth claim against each Defendant, Rothenberg asserts a claim for public disclosure of private facts.  <u>See</u> Second Amended Complaint ¶¶ 31–34.   Under Florida law, the elements of a claim of public disclosure of private facts are: 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern.  <u>Spilfogel</u>, 433 F. App'x at 725 (citing <u>Cape Publ'ns, Inc. v. Hitchner</u>, 549 So. 2d 1374, 1377 (Fla. 1989)).   Each Defendant argues that Rothenberg's allegations in support of this claim are too conclusory to state a plausible claim for relief because they do not provide any specific details about the alleged disclosures.  <u>See</u> Swift Motion at 3; Target Motion at 13; Costco Motion at 4–5; Wal-Mart Motion at 3.

Here, too, Defendants are correct.   While Rothenberg contends that each Defendant disclosed several specific categories of his information, including his "home address, passwords . . . phone number," and banking data, he does not provide any well-pled factual allegations to support these conclusory statements.  <u>See</u> Second Amended Complaint ¶ 31.   Moreover, Rothenberg includes no facts which suggest when or how any Defendant got the information, when or how any Defendant published the information, who received it, or how Rothenberg learned that this was occurring.   Given the scope of Rothenberg's allegations, his conclusory pleading simply does not contain enough factual content to give any of the Defendants fair notice of his

claim or state any plausible claim for public disclosure of private facts.   Swift also argues that Rothenberg's claim for public disclosure of private facts must fail as a matter of law because none of this information is highly offensive such that it would damage Rothenberg's reputation or otherwise cause him embarrassment.   <u>See</u> Swift Motion at 15.   While this argument is likely well-taken, because Rothenberg's allegations in the Second Amended Complaint are too conclusory to state a claim for relief that is plausible on its face, the Court does not reach this issue.   Thus, these claims too are due to be dismissed.

### e. Intentional Infliction of Emotional Distress

As his fifth claim against each Defendant, Rothenberg brings a claim for intentional infliction of emotional distress (IIED).   <u>See</u> <u>id.</u> ¶¶ 35–37.   "Under applicable Florida law, in order to state a cause of action for intentional infliction of emotional distress the plaintiff must demonstrate: 1) deliberate or reckless infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which conduct of the defendant must have caused the suffering; and 4) the suffering must have been severe."   <u>See</u> <u>Golden v. Complete Holdings, Inc.</u>, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993).   Each Defendant contends that Rothenberg has not pleaded sufficient factual allegations to support a plausible

inference that it engaged in such conduct.[19]   See Swift Motion at 3; Costco Motion at 4–5; Target Motion at 14; Wal-Mart Motion at 6.

Rothenberg appears to base his claims for IIED on the acts he ascribes to each of the Defendants in his other claims.   See, e.g., Second Amended Complaint ¶ 35 (referring to "the tortious conduct described herein").   He also asserts that he was "followed inappropriately," and that each Defendant "screamed statements of assault and defamation" and threatened to harm third parties if Rothenberg "d[id] not 'do whatever they say.'"   Id. ¶ 37.   To the extent that Rothenberg's claim for IIED is based on the conduct he describes in his previous claims against each Defendant, the allegations fail to provide a plausible factual basis for the claim for the same reasons discussed above.   And in his IIED claims, Rothenberg does not provide additional facts that, if true, would support an inference that any Defendant is liable for the wrongs he asserts.   Instead, Rothenberg supports his claim with a string of legal conclusions which are not entitled to a presumption of truth.   See Iqbal, 556 U.S. at 679.   Accordingly, Rothenberg's claims for IIED fare no better than his other claims, and as such are due to be dismissed as to each Defendant.

---

[19] In addition to its contention that Rothenberg has failed to present sufficient factual allegations to support any of his claims, Swift argues that his IIED claim fails as a matter of law because "the alleged conduct is not sufficiently outrageous to sustain a claim for IIED under Florida law." Swift Motion at 19.   But because Rothenberg fails to support his assertions with factual allegations, the Court need not reach this argument.

### f. Conspiracy

As his sixth claim against each Defendant, Rothenberg asserts a claim for conspiracy.  <u>See</u> Second Amended Complaint ¶¶ 38–40.   To state a claim for civil conspiracy pursuant to Florida law, one must allege: "(1) an [agreement] between two or more parties; (2) to do an unlawful act or do a lawful act by unlawful means; (3) the doing of some overt act in [furtherance] of the conspiracy; and (4) damage to [the] plaintiff as a result of the acts done under the conspiracy."   <u>See, e.g.</u>, <u>TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd.</u>, 843 F. Supp. 2d 1284, 1301 (S.D. Fla. 2012); <u>see also</u> <u>Philip Morris USA, Inc. v. Russo</u>, 175 So. 3d 681, 686 n.9 (Fla. 2015).   As with Rothenberg's other claims, each Defendant argues that Rothenberg has not alleged sufficient facts to plausibly support his conspiracy claim.   <u>See</u> Swift Motion at 19–20; Costco Motion at 4–5; Target Motion at 14–15; Wal-Mart Motion at 7   In addition, Swift asserts that Florida law does not recognize civil conspiracy as an "independent tort."   Swift Motion at 19.   In response, Rothenberg asserts that his claim for "Civil Conspiracy only falls short when ignoring all of the evidence" he filed "to show conspiratorial collusion."   Swift Response at 12.

For the reasons explained above, Rothenberg's continued reliance on filings outside the Second Amended Complaint is unavailing: the Court cannot "'serve as <u>de facto</u> counsel for [Rothenberg] or to rewrite [his] otherwise deficient pleading'" based upon what the Court observes in the videos he submitted.

Campbell, 760 F.3d at 1168–69 (quoting GJR Invs., Inc., 132 F.3d at 1369). Moreover, a claim for civil conspiracy will not lie unless the plaintiff alleges an underlying civil wrong, done pursuant to the conspiracy, which results in damage to the plaintiff.   See Marriott Int'l v. Am. Bridge Bahamas, Ltd., 193 So. 3d 902, 909 (Fla. Dist. Ct. App. 2015).   And this "independent civil wrong on which the civil conspiracy is dependent must be alleged in the complaint." Id.   If the claim for the underlying civil wrong fails, then it cannot serve as the basis for the conspiracy claim.   See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007) (citation omitted) (applying Florida law); see also 2002 Irrevocable Trust for Richard C. Hvizdak v. Huntington Nat'l Bank, No. 2:08-CV-556-FTM-99DNF, 2008 WL 5110778, at *11 (M.D. Fla. Dec. 1, 2008) (having dismissed the fraud claim, the court must "dismiss the civil conspiracy claim as there is no longer an underlying tort or underlying unlawful act to form the basis of a conspiracy").

Here, Rothenberg cannot maintain his claim for conspiracy because he has not sufficiently pled any underlying civil wrong.   See Martinez, 480 F.3d at 1067.   In his claims for civil conspiracy, Rothenberg fails to allege any additional facts, and simply presents legal conclusions that each Defendant "conspired to accomplish an unlawful purpose," "committed unlawful, overt acts to further the object o[f] their course of action," and "conspired internally nationwide" to subject Rothenberg to tortious conduct.   See Second Amended

Complaint ¶¶ 38–39.   These allegations are simply "a formulaic recitation of the elements of a cause of action," and as such they simply do not suffice to state a claim for relief that is plausible on its face.   See Twombly, 550 U.S. at 555. As such, the conspiracy claims are due to be dismissed.

In sum, each of Rothenberg's claims against each Defendant are due to be dismissed because each one fails to include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.   Indeed, the allegations in Rothenberg's Second Amended Complaint are best described as "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts," which are insufficient to state any plausible claim to relief.   Jackson, 372 F.3d at 1262.   Such allegations amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Iqbal, 556 U.S. at 678.   In his Second Amended Complaint, Rothenberg neither gives Defendants fair notice of the claims he brings or their factual basis, nor does he present sufficient factual matter to allow the Court to conclude that he states any plausible claim to relief.   His Second Amended Complaint is due to be dismissed.

Although Rothenberg requests leave to amend because the "supplementary filings" provide "much of the very factual content claimed to be lacking" in his Second Amended Complaint, Swift Response at 13, further leave to amend is unwarranted.   As an initial matter, a request for affirmative relief,

such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion.  See Rule 7(b); see also Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla., 48 F.4th 1222, 1236 (11th Cir. 2022) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quoting Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1277 (11th Cir. 2018))); Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009).   In addition to this deficiency, the request in the Swift Response also fails to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."  Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999); see also McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1361–62 (11th Cir. 2006) (same).   More importantly, Rothenberg has had two opportunities to cure the defects in his Original Complaint.   Despite the Court's instruction regarding his need to set forth sufficient factual allegations in his pleading, Rothenberg simply has failed to do so.   Accordingly, the Court will dismiss the Second Amended Complaint with prejudice.   See Lacy v. BP P.L.C., 723 F. App'x 713, 717 (11th Cir. 2018) (holding that a district court did not abuse its discretion by dismissing a pro se

complaint without granting leave to amend because the plaintiff "failed to demonstrate that he would be able to resolve the defects in his amended complaint" despite "multiple opportunities to do so").

## V.      Conclusion

For the foregoing reasons, Defendants' Motions are due to be granted and the case is due to be dismissed.    Accordingly, it is

**ORDERED:**

1.      The Motions to Dismiss (Docs. 47, 49, 50, and 51) are **GRANTED**.

2.      Plaintiff Aaron Rothenberg's Second Amended Complaint (Doc. 44) is **DISMISSED**.

3.      The Clerk of the Court is directed to enter judgment in favor of Defendants, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on November 14, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc31

Copies to:

Counsel of Record
Pro Se Party

- 31 -